**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MIGUEL ANGEL AGUIRRE ONATE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1403-SLP** |
| | ) | |
| **CHRIS GANTT, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Miguel Angel Aguirre Onate, a Mexican citizen proceeding though counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1).[1] United States Chief District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 7), Respondents timely filed a Response to the Petition.[2] (Doc. 9). Petitioner filed a reply. (Doc. 10). As fully set forth below, the undersigned recommends that the Petition be **DENIED**.

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[2] The response was not filed on behalf of Respondent Chris Gantt, Warden of Cimarron Correctional Facility, because he is not a federal official. (Doc. 9, at 1 n.1). The undersigned concludes that a separate response from Chris Gantt is not necessary to resolve this matter.

## I. Factual Background and Procedural History

Petitioner, who is a native and citizen of Mexico, entered the United States on or around June 1, 1998, without admission or parole after inspection. (Doc. 1, at 6; Doc. 9, at Ex. 1, at ¶ 8). He alleges that during that time he "developed substantial family, community, and business ties;" "maintained steady employment and complied with his obligation to file federal and state income tax returns;" and cared for his United States citizen mother. (Doc. 1, at 6). On or around May 24, 2008, Petitioner was arrested and charged with driving under the influence and several other charges, which were later dismissed. (*Id.* at 6-7). He ultimately entered a guilty plea for reckless driving. (*Id.*)

After his arrest, on or around May 28, 2008, ICE placed Petitioner into removal proceedings through the issuance of a Notice to Appear. (*Id.* at 7). The following day, on May 29, 2008, ICE released him on his own recognizance. (*Id.*) On October 14, 2009, Petitioner sought Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. (Doc. 9, at Ex. 1, at ¶ 15). On April 19, 2010, an immigration judge ordered Petitioner removed, and his order of removal became final on June 28, 2011.[3]

[3] Petitioner alleges his order of removal became final on September 30, 2014. (Doc. 1, at 7). Respondents allege Petitioner's order of removal became final on April 19, 2010. (Doc. 9, at 1). However, the undersigned concludes his order of removal became final on June 28, 2011, when the Board of Immigration Appeals dismissed his appeal. (Doc. 9, at Ex. 1, at ¶ 17); *see* 8 C.F.R. § 1241.1(a) ("An order of removal made by the immigration judge at the conclusion of proceedings . . . shall become final [u]pon dismissal of an appeal by the Board of Immigration Appeals."). The exact date his removal order became administratively final does not impact the undersigned's ultimate analysis.

(Doc. 1, at 7). On November 12, 2013, ICE released Petitioner on an Order of Supervision. (*Id.*) He alleges he complied with all reporting obligations while released. (*Id.*)[4]

On September 16, 2024, Petitioner filed a Form I-360 Petition for Amerasian, Widow(er), or Special Immigrant ("VAWA Petition") with United States Citizenship and Immigration Services ("USCIS"). (*Id.*). On October 21, 2024, USCIS issued a prima facie determination on Petitioner's VAWA Petition, which was initially valid for one year and then extended until October 7, 2026. (*Id.*; Doc. 1, at Ex. 1, at 1-3).

On May 21, 2026, ICE re-detained Petitioner. (Doc. 1, at 7). The following day, on May 22, 2026, Petitioner submitted a Form I-246 request for a one-year stay of removal and immediate release to ICE Enforcement and Removal Operations' Oklahoma City office. (*Id.* at 8). On June 12, 2026, Petitioner filed this Petition. (*Id.* at 18). At the time he filed his Petition he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. (*Id.* at 7). On June 25, 2026, Robert Cerna, ICE Deputy Field Office Director, determined that Petitioner did not warrant a favorable exercise of discretion and denied his application for a stay of removal. (Doc. 9, at Ex. 2, at 1).[5]

---

[4] Deportation Officer Charles Seale alleges additional criminal and immigration history for Petitioner, including that the date he last entered the country was on or about September 3, 1999. (Doc. 9, at Ex. 1, at ¶¶ 9-16). The undersigned concludes these additional facts would not impact the analysis for purposes of Petitioner's habeas petition.

[5] On September 29, 2026, Respondents notified the Court that "Petitioner is scheduled to be removed from the United States after the expiration of seventy-two (72) hours from this filing." (Doc. 18, at 1-2). As of the filing of this Report and Recommendation, neither party has informed the Court of Petitioner's removal.

## II. Petitioner's Claims and Respondents' Responses

Petitioner alleges (1) his detention and threatened removal are not in accordance with law because they contravene a preliminary injunction in *Immigration Center for Women & Children v. Noem*, No. 2:25-cv-9848-AB-AS, 351 F.R.D. 324 (C.D. Cal. May 20, 2025) (hereinafter "*ICWC*" or "ICWC PI Order") from the Central District of California, in violation of the Administrative Procedures Act ("APA"); (2) Respondents have failed to follow their own policies in violation of the *Accardi* Doctrine; (3) his continued detention when he is not a flight risk or danger to the community and his removal is not imminent serves no legitimate purpose and is excessive in violation of his substantive due process rights; (4) his continued detention as a VAWA self-petitioner with a valid prima facie determination violates his procedural due process rights; and (5) Petitioner's continued detention is not authorized by law in violation of 28 U.S.C. § 2241. (Doc. 1, at 12-17). As relief, Petitioner requests that the Court order his immediate release with continued or reinstated conditions of supervision and order Respondents not to remove him while his VAWA self-petition remains pending. (*Id.* at 17).

Respondents assert (1) the Court lacks jurisdiction to hear Petitioner's request to stay his removal; (2) even if the ICWC PI Order applies to Petitioner, nothing in the ICWC PI Order mandates habeas relief for him; and (3) Petitioner's detention does not violate due process because he was detained less than six months when he filed his Petition and he will not suffer irreparable harm if deported. (Doc. 9, at 3-14).

In Reply, Petitioner clarifies that he "does not seek review of his removal order, he seeks a determination that his detention, commenced the day after [the ICWC PI Order]

issued and continued since, violates the APA, the *Accardi* doctrine, and the Fifth Amendment." (Doc. 10, at 1-2). He further asserts "Respondents' denial of Petitioner's stay request, and their subsequent written refusal to release him, do not address the presumption [the ICWC PI Order] restored in Petitioner's favor." (*Id*. at 2).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Legal Framework for VAWA Petitions and ICE Guidance

The Violence Against Women Act of 1994 ("VAWA") amended the Immigration and Nationality Act and "created the VAWA self-petition, which provided that noncitizens with abusive qualifying family members can 'self-petition' for family-based immigrant visas without their abuser's knowledge, consent, or participation." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii)).

After receiving a self-petition, USCIS determines whether the evidence submitted establishes a prima facie case for VAWA relief. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.A.1., https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5. If USCIS concludes that the self-petitioner has addressed each of VAWA's eligibility requirements, it issues a Notice of Prima Facie Case. *See id.* The Notice "does not confer immigration status or a benefit," and it "is not a determination that the self-petitioner established

eligibility or that the self-petitioner has met his or her burden of proof." *Id.* However, self-petitioners who establish a prima facie case are eligible for certain public benefits "such as welfare, health, disability, or unemployment and similar benefits while their petitions are pending." *ICWC*, 351 F.R.D. at 351 (citing 8 U.S.C. §§ 1611(a), 1641(c)).

ICE's 2011 policy provided that it was generally against ICE policy to initiate removal proceedings against known victims of a crime, and that exercising favorable discretion—such as release and deferral or a stay of removal—would generally be appropriate. *Id.* at 353. ICE's 2021 policy echoed these policy choices and added that ICE would typically request expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.*

In 2025, however, ICE rescinded the 2021 Directive and eliminated the presumption of protection from immigration enforcement for these petitioners and replaced it with a presumption of enforcement, subject to narrow limitations (the "2025 Guidance"). *Id.* at 354. The 2025 Guidance also allegedly refused to honor USCIS grants of deferred action to non-citizens with pending petitions and instead effectively revoked those grants of deferred action by pursuing immigration enforcement actions against such persons. *Id.* Specifically,

> the 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a

> noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

*Id.* (internal citations omitted).

In *ICWC*, the Central District of California preliminarily enjoined the 2025 Guidance. As the court explained,

> [t]he 2025 Guidance expressly repealed previous policy and dramatically changed ICE's enforcement posture towards individuals with pending petitions for victim-based immigration benefits from a policy of refraining from immigration enforcement against such persons in deference to their pending applications, to a policy of enforcement despite their pending applications. The victim-based immigration benefits in issue are VAWA self-petitions, U visas, and T visas.

*Id.* at 348. The 2025 Guidance, among other actions, "rescinded and superseded" ICE Directive 11005.3, "Using A Victim-Centered Approach with Noncitizen Crime Victims" (Dec. 2, 2021) ("2021 Directive") and ICE Policy Statement "Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs" (Jun. 17, 2011) ("2011 Policy"). *Id.* at 350, 353-355. The Central District of California ultimately enjoined the enforcement of the 2025 Guidance, which implicitly reinstated the 2021 Directive and the 2011 Policy. *Id.* at 397 ("Pursuant to 5 U.S.C. § 705, the Court hereby STAYS the 2025 Guidance, including its rescission of prior policies.").

The *ICWC* court continued that the stay "applies in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes." *Id.* These classes include:

> (1) "Pending Petition Class: All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement."

> (2) "Deferred Action Class: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status."
>
> (3) "Stay of Removal Class: All individuals with a pending U or T visa petition who, since January 30, 2025, have been, are, or will be detained by ICE and who request or requested a stay of final removal order prior to enforcement of that removal order."

*Id*. at 396. Accordingly, the reinstated 2021 Directive and 2011 Policy only applies to those who are members among these classes. *Id*. at 396-397. However, these policies did not immediately guarantee a class member's release from detention, as they indicate that a qualifying class member may nonetheless be detained for "serious adverse factors," such as national security concerns or a serious criminal history. *Id*. at 353.

## V. Analysis

### A. The Court Does Not Have Jurisdiction to Prevent Petitioner's Removal.

To the extent Petitioner seeks a stay of his removal, this Court lacks jurisdiction to consider that request. Federal law strips federal district courts of jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [the Department of Homeland Security ("DHS")] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). In the Tenth Circuit, a court must review whether a habeas petitioner's claims are "connected directly and immediately with a decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders. *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010). An order by this Court prohibiting

Petitioner's removal would directly relate to a decision to execute removal orders. *See Olola v. U.S. Att'y Gen.*, No. 18-CV-00058-GPG, 2018 WL 11446892, at *3 (D. Colo. Feb. 22, 2018) ("Federal law unambiguously strips federal district courts of jurisdiction to stay or enjoin an alien's removal.") (citation modified); *see also, e.g., Makuey v. Scott*, No. 2:26-CV-00632, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026) (holding the court lacks jurisdiction to stay petitioner's removal under § 1252(g)); *Hernandez Llanes v. Warden, Fla. Soft Side Det. Ctr.*, No. 2:26-CV-1030, 2026 WL 925615, at *2 (M.D. Fla. Apr. 6, 2026) (same). Accordingly, § 1252(g) strips the Court of jurisdiction to consider Petitioner's request to prohibit his removal.

The Court does, however, have jurisdiction to consider Petitioner's claims arising out of his current detention. *See, e.g., Semer v. Blanche*, No. CIV-26-238-SLP, 2026 WL 1427059, at *2 (W.D. Okla. May 21, 2026) ("reject[ing] Respondents' argument that § 1252(g) deprives the Court of jurisdiction" to hear petitioner's claims challenging re-detention following his prior release); *Lopez v. Corecivic Cimmaron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *2 (W.D. Okla. Jan. 21, 2026) (noting the Supreme Court's emphasis that "§ 1252(g) must be read narrowly and applies only to the three discrete actions expressly listed in the statute"). The undersigned addresses each, in turn.

### B. Petitioner's Membership in the ICWC PI Order Pending Petition Class Does Not Entitle Him to Relief.

Petitioner first argues that because he is a member of the Pending Petition Class,[6] "Respondents may not detain or pursue removal against him based on the stayed 2025 Guidance or in disregard of the restored 2011 Policy and 2021 Directive." (Doc. 1, at 13). He also argues that because the ICWC PI Order stayed the 2025 Guidance, the operative 2011 Policy and 2021 Directive "require ICE to refrain from enforcement against known applicants or petitioners for victim-based immigration benefits absent exceptional circumstances, to consider eligibility for victim-based benefits as a positive discretionary factor, to coordinate with USCIS, to generally issue a stay of removal to a noncitizen with a pending victim-based petition subject to a final removal order, and to respond to properly submitted stay requests." (*Id.* at 13-14).[7]

---

[6] In the Petition, Petitioner alleges membership in both the Pending Petition Class and the Stay of Removal Class. (Doc. 1, at 13). However, after the Petition was filed, ICE denied Petitioner's application for a stay of removal. (Doc. 9, at Ex. 2, at 1). Accordingly, Petitioner is no longer a member of the Stay of Removal Class and that claim is moot. (*See* Doc. 10, at 1 (asserting in Reply only that "Petitioner is a member of the Pending Petition Class")).

[7] To the extent Petitioner brings his claims pursuant to the APA, because his claims for relief "necessarily imply the invalidity of [his] confinement," such claims "fall within the core of the writ of habeas corpus and thus must be brought in habeas," *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citation modified); *see also id.* at 674 ("Given 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (citation modified) (Kavanaugh, J. concurring); *Soberanes*, 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687). Notwithstanding, the undersigned considers Petitioner's ICWC PI Order claims to the extent they are alleging violations of the *Accardi* doctrine and due process.

As an initial matter, there are substantial questions about what effect, if any, *ICWC*'s injunction has on the Court here. *See Guillermo B. R. v. Blanche*, No. 26-CV-3599 (LMP/ECW), 2026 WL 2665614, at *3 (D. Minn. Sep. 10, 2026) (noting "substantial questions" about what effect ICWC has on the court); *Jose Alberto C. D. v. Blanche*, No. 26-CV-3566 (KMM/LIB), 2026 WL 2588362, at *4 (D. Minn. Sep. 2, 2026) (noting "this Court has serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case"); *F.J.V.R. v. Moniz*, No. 26-CV-12525-FDS, 2026 WL 1751998, at *3 (D. Mass. June 18, 2026) ("It is not clear what effect, if any, that non-final order has in this proceeding, and whether this Court has the authority to enforce it."). A majority of district courts have expressly found that *ICWC* does not apply outside the Central District of California, often finding that the injunction is still in its preliminary stages and that an appeal is pending, meaning that the injunction is not yet final and does not hold nationwide or preclusive affect. *See, e.g., Guillermo B. R.*, 2026 WL 2665614, at *3; *Rodrigues v. Lynch*, No. 1:26-CV-2319, 2026 WL 2520313, at *2 n.3 (W.D. Mich. Aug. 26, 2026) ("Under these circumstances, at this time, this non-binding case does not present a basis for relief in this habeas action."); *Portillo Garcia v. Mullin*, No. CV H-26-2481, 2026 WL 2323547, at *1 n.11 (S.D. Tex. Aug. 11, 2026) ("However, that matter remams [sic] pending in another district court and is presently in a prelimmary [sic] posture. The [c]ourt is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to habeas relief."); *Prado Orozco v. Raycraft*, No. 2:26-CV-11985, 2026 WL 2138181, at *7 (E.D. Mich. July 24, 2026) ("*ICWC*'s persuasiveness is highly limited by the fact that it is in a non-final,

preliminary injunction posture currently on appeal from a different district that is not even within this Circuit."); *Patricio-Morales v. Ducote*, No. 3:26-CV-00877 SEC P, 2026 WL 2086896, at *1 (W.D. La. July 20, 2026) (noting "*ICWC* remains pending in another district and is presently in a preliminary posture"); *Ore-Falcon v. Wofford*, No. 1:26-CV-00181-WBS-EFB, 2026 WL 1871024, at *3 n.1 (E.D. Cal. June 29, 2026) ("The decision of another judge in a different district is not binding upon this court any more than that court is bound by the decisions of this court."); *Rauda Choto v. Ladwig*, No. CV 26-0322, 2026 WL 1652576, at *1 (W.D. La. June 8, 2026) ("However, that matter remains pending in another district court and is presently in a preliminary posture. The Court is not persuaded that the existence of a non-final order entered in separate litigation independently establishes Petitioner's entitlement to emergency injunctive relief in this proceeding."); *Almanza v. Oddo*, No. 3:26-CV-720, 2026 WL 1506283, at *6 n.5 (W.D. Pa. May 29, 2026) (noting that the preliminary injunction issued in the California class action is not binding); *J.R.S.B. v. Olson*, No. 3:26-CV-478-CCB-SJF, 2026 WL 1481267, at *4 n.5 (N.D. Ind. May 27, 2026) (observing that a petitioner remains free to seek relief as a purported class member in the California action, but another court's non-final order is not subject to preclusive effect in a separate proceeding).[8]

[8] *But see, e.g., Escobar Ramirez v. Mullin*, No. 26-3278-JWL, 2026 WL 2619875, at *2 (D. Kan. Sep. 4, 2026) (finding that the government "violated the 2021 Directive, which now governs enforcement activities with respect to certain noncitizens"); *Villeda Mejia v. Baltazar*, No. 26-CV-02084-RMR, 2026 WL 2224656, at *2 (D. Colo. Aug. 3, 2026) (concluding a T-visa applicant "Petitioner falls within [the ICWC PI Order] class, is protected from removal, and must be released"); *Munoz Leal v. Bondi*, No. 4:25-CV-06072, 2026 WL 1847745, at *1 (S.D. Tex. June 26, 2026) (noting respondents "do not contest that Petitioner is a member of the nationwide class action"); *Gonzalez v. Wesling*, No. 26-

But even if *ICWC* had effect here, the ICWC PI Order would not entitle Petitioner to release. "A pending VAWA application does not, standing alone, confer lawful immigration status or create a statutory entitlement to release from custody. Petitioner has not identified a statute or binding regulation that prohibited Respondents from detaining him while his application remained pending." *Prado Orozco*, 2026 WL 2138181, at *7 (citation modified); *see also Flores v. Blanche*, No. 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026) (holding in the context of pending U-visa applications, a pending application "does not, standing alone, confer lawful immigration status, prevent enforcement of a final order of removal, or create a statutory entitlement to release from custody"). ICE's internal policy "does not, without more, create a judicially enforceable right to release or restrict an agency's statutory authority to detain an individual subject to a final order of removal." *Flores*, 2026 WL 2069995, at *2 (denying petitioner's APA and *Accardi* doctrine claims based on purported membership in the ICWC PI Order class).

Further, even under ICE's prior policies, Petitioner would have only been subject to ICE's discretionary "deferred action" not to execute his removal order.[9] *See Eliseo C. v. Blanche*, No. 26-CV-2282 (ECT/SGE), 2026 WL 2683449, at *7 (D. Minn. June 29, 2026) (noting "the 2011 and 2021 ICE policies themselves state that they provide guidance

---

CV-231-JJM-AEM, 2026 WL 1765871, at *9 (D.R.I. June 19, 2026) (finding petitioner "clearly belongs" to both the Pending Petition Class and the Stay of Removal Class); *Perdomo Reynaud v. Lyons*, No. 26-CV-05905, 2026 WL 1674229, at *5 n.4 (D.N.J. June 10, 2026) (recognizing petitioner's membership in the ICWC PI Order class).

[9] Though, the undersigned notes Petitioner has not sufficiently alleged he was in active deferred action status. *See infra* footnote 10 and accompanying text.

regarding ICE's position with respect to its exercise of 'prosecutorial discretion'"). Deferred action is ordinarily understood to be an act of "prosecutorial discretion," and "DHS has sole authority to exercise prosecutorial discretion in immigration cases." *Rauda-Castillo v. Lynch*, 616 F. App'x 385, 388 (10th Cir. 2015); *see Jose Alberto C. D.*, 2026 WL 2588362, at *7 ("In sum, because his deferred action is ultimately a matter of prosecutorial discretion, [petitioner] has failed to show that he is entitled to a writ of habeas corpus, and the Court denies his habeas petition on this basis.").

Accordingly, Petitioner has not demonstrated that his custody is unlawful under a governing statute in a manner that would entitle him to habeas relief.

### C. Petitioner's Detention Does Not Violate Due Process.

Nor does *ICWC* help Petitioner's claim that his detention while having a pending VAWA petition violates his constitutional right to due process. The *ICWC* case, where relevant to Petitioner's claims here, "had nothing to do with due process." *Prado Orozco*, 2026 WL 2138181, at *8. Thus, to the extent Petitioner relies on *ICWC* for his VAWA-related due process claim, his reliance is misplaced.

#### 1. Substantive Due Process

Petitioner alleges his continued detention "serves no legitimate purpose and is excessive in relation to any asserted government interest" in violation of his substantive due process rights, which "warrants immediate release." (Doc. 1, at 15). However, it is undisputed Petitioner is subject to a final order of removal and his detention is, thus, governed by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 9, at 12). Under *Zadvydas*, the "presumptively reasonable period of detention" is six months. 533 U.S. at 701; *see*

*also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "Once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (citation modified). However, Petitioner fails to make any allegations that his removal is not likely in the reasonably foreseeable future. In fact, any such allegation would be belied by the record, which shows Respondents intend to remove Petitioner in the near future. (*See* Doc. 18, at 1-2 (stating "Petitioner is scheduled to be removed from the United States")). Further, Petitioner had only been detained for two months at the time he filed his Petition—well before the six-months described in *Zadvydas*. *Accord Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *9 (W.D. Okla. Jan. 26, 2026) (noting "the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against").

**2. Procedural Due Process**

Petitioner also alleges his detention violates his procedural due process rights because (1) he has a "profound liberty interest in freedom from physical detention and in avoiding removal while USCIS adjudicates his pending VAWA petition;" (2) the "risk of erroneous deprivation is high when ICE proceeds against a known VAWA self-petitioner with a valid prima facie determination without applying the restored policies mandated by the ICWC PI Order;" and (3) the government's burden is minimal because "ICE need only honor the ICWC PI Order, apply the restored policies, consider the USCIS prima facie

determination as a positive discretionary factor, respond to the pending stay request, coordinate with USCIS, and release Petitioner or continue reasonable supervision while USCIS completes adjudication." (Doc. 1, at 15-16). While the Petition fails to cite any case law, the Petition's allegations mirror the framework set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976). (*See* Doc. 10, at 7 (citing *Mathews* in reply)). Accordingly, the undersigned concludes the Court should use that framework to determine whether Petitioner's procedural due process rights have been violated. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 538-39 (2004) ("The ordinary mechanism that [courts] use for determining the procedures that are necessary to ensure that a [person] is not 'deprived of life, liberty, or property, without due process of law,' . . . is the test . . . articulated in *Mathews v. Eldrige*.") (citation omitted). The *Mathews* factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

**a. Private interest**

Petitioner alleges he has "a profound liberty interest in freedom from physical detention." (Doc. 1, at 15). However, as Respondents note, Petitioner does not have a private interest in his VAWA petition being granted. (Doc. 9, at 14).[10] Further, the fact

[10] The undersigned notes this case is distinguishable from cases where courts have found petitioners have a liberty interest based on active deferred action status while those

that Petitioner has a prima facie determination does not mean his VAWA petition will be granted, and he has not identified any concrete ways in which his detention has prevented him from pursuing his VAWA petition. (*See id.*); *accord Olivera v. Edlow*, No. CV 25-13228-BEM, 2026 WL 2883816, at *4 (D. Mass. Sep. 25, 2026) (finding that while "some courts have recognized a cognizable interest in freedom from undue interference while applying for certain immigration benefits," "in those cases, the plaintiffs generally identified concrete government actions that specifically interfered with their applications").

**b. Erroneous deprivation**

Petitioner argues the "risk of erroneous deprivation is high" considering Petitioner's

---

petitioners have pending U-visa petitions. *See Steven F.V.Z. v. Blanche*, No. 26-CV-2909 (ECT/SGE), 2026 WL 2641759, at *4 (D. Minn. Sep. 8, 2026) (noting petitioner's due process claim fails where "it is not a case that a grant of deferred action strips the government of its authority to remove a noncitizen" where "[t]he record does not sufficiently support [petitioner's] allegation that USCIS granted him deferred action to begin with"); *cf. Parada v. Rice*, No. 1:25-CV-01660, 2026 WL 2122879, at *3 (W.D. La. July 1, 2026) ("Although the conclusion reached here does not depend solely upon procedural due process principles, several courts have recognized that noncitizens with active deferred action possess constitutionally protected liberty interests."), *report and recommendation adopted sub nom. Pineda Parada v. Rice*, No. 25-CV-1660 SEC P, 2026 WL 2116973 (W.D. La. July 22, 2026); *Ramos-Lopez v. Bondi*, No. 1:26-CV-01175-PX, 2026 WL 1745700, at *7 (D. Md. June 17, 2026) ("For this reason, the Court joins the litany of others who conclude that once someone such as Ramos-Lopez is granted deferred action and SIJ status and the ability to seek work authorization, he has a protected property and liberty interest under the due process clause.") (citation modified); *Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. CV 26-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (collecting cases where "a noncitizen with deferred action status has a liberty interest protected under the Due Process Clause"). Here, Petitioner has a pending VAWA petition but has not alleged ICE granted any deferred action based on the pending petition. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.D.2, https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5#footnotelink-43 (noting deferred action can be granted for VAWA petitioners ***after the VAWA petition has been approved***) (emphasis added); (Doc. 9, at Ex. 2, at 1 (denying Petitioner's stay of removal request)).

pending VAWA petition. The undersigned disagrees. Petitioner has been subject to a final order of removal since June 28, 2011, when the Board of Immigration Appeals dismissed his appeal. (*See* Doc. 9, at Ex. 1, at ¶ 17). Further, the government has a legitimate interest in facilitating the removal of non-citizens with a final order of removal. *See Miranda v. Garland*, 34 F.4th 338, 349 (4th Cir. 2022) (noting "the government's interest in facilitating deportations"). And, as Respondents note, Petitioner's removal will not impact his ability to pursue his VAWA petition. (*See* Doc. 9, at 13-14); *see R.O.A. v. Edlow*, 805 F. Supp. 3d 565, 576 (D. Vt. 2025) (concluding petitioner's "removal would not affect his eligibility for VAWA"); *accord Olivera*, 2026 WL 2883816, at *4 (noting the lack of a liberty interest for U-visa petitioners where a non-citizen does not need to be present in the United States to be eligible for that visa).

**c. Government burden**

Finally, the undersigned concludes the burden on the government is more than minimal where Petitioner seeks for ICE to "honor the ICWC PI Order, apply the restored policies, consider the USCIS prima facie determination as a positive discretionary factor, respond to the pending stay request, coordinate with USCIS, and release Petitioner or continue reasonable supervision while USCIS completes adjudication." (Doc. 1, at 15-16). The is especially true where ICE has already denied Petitioner's request for stay of removal and initiated removal of Petitioner subject to his final order of removal. *Cf. Vargas Cervantes v. Mullin*, No. 1:26-CV-04467-DC-SCR, 2026 WL 1907198, at *6 (E.D. Cal. July 2, 2026) (concluding the government's interest in keeping a petitioner subject to the ICWC PI Order detained is minimal where "removal is not imminent under a final order

of removal”), *report and recommendation adopted in part sub nom. Cervantes v. Mullin,* No. 1:26-CV-04467-DC-SCR (HC), 2026 WL 2030189 (E.D. Cal. July 14, 2026).

**d. Conclusion**

Accordingly, because none of the *Mathews* factors favor Petitioner, the Court should conclude that Petitioner’s procedural due process rights were not violated.

## VI. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **DENIED. The court advises the parties of their right to object to this Report and Recommendation by October 13, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[11] The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

[11] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee’s note to 1983 addition (noting that rule establishing 14-day response time “does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28.”); *see also Whitmore v. Parker,* 484 F. App’x 227, 231, 231 n.2 (10th Cir. 2012) (noting that “[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241” and that “while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process”).

**ENTERED** this 6th day of October, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE